THOMAS F. McCRAN, ATTORNEY-GENERAL, ON THE RE-
LATION OF HERMAN J. WILLE, RELATOR, v. WILLIAM
A. LORD AND FRANK J. MURRAY, DEFENDANTS.

Argued November 6, 1919—Decided February 9, 1920.

1. The right of the director of the department of revenue to act as
   mayor of a municipality in case of a vacancy in that office, under
   the statute relating to the government of municipalities, com-
   monly called the Walsh act, does not become a fixed right for
   the unexpired term of a retiring mayor, but ceases when the va-
   cancy is filled by the election of a new presiding officer.
2. When the presiding officer resigns as a commissioner and his
   successor is elected by the people, he does not become mayor
   unless the commissioners elect him as presiding officer. They
   have the right to choose such officer from its members when a
   vacancy occurs, in which event the vacancy ceases and the person
   so chosen becomes *ex-officio* mayor.

On demurrer by each defendant in *quo warranto* to deter-
mine which is entitled to exercise the office of mayor of the
city of Orange, New Jersey.

Before Justices TRENCHARD and BERGEN.

For the relator, *Thomas F. McCran,* attorney-general, and
*William A. Calhoun.*

For the demurrant William A. Lord, *McCarter & English.*

For the demurrant Frank J. Murray, *Pitney, Hardin &
Skinner.*

The opinion of the court was delivered by

BERGEN, J. The relator filed an information in the nature
of a *quo warranto* calling upon both defendants to answer by
what right they respectively claimed to exercise the office of
mayor of the city Orange.

The information sets out that one Daniel F. Minnehan and three others were, on May 14th, 1918, duly elected commissioners of the city of Orange under the act approved April 25th, 1911, entitled "An act relating to, regulating and providing for the government of cities, towns, townships, boroughs, villages and municipalities governed by boards of commissioners or improvement commissions in this state" (first supplement to *Comp. Stat., p.* 1087) ; that Minnehan was, at the first meeting of the commissioners, chosen to preside at all meetings and thereby became mayor by virtue of the statute; that Frank J. Murray, one of the commissioners, was at the same meeting designated as director of revenue and finance; that August 5th, 1919, Minnehan resigned his office of commissioner, and at an election held September 9th, 1919, William A. Lord was elected as a commissioner to fill the vacancy caused by the resignation of Minnehan; that September 16th, 1919, the commissioners adopted a resolution and chose Lord as presiding officer, mayor and director of the department of public affairs. Since which time both Murray and Lord have been acting as presiding officer and mayor. Both have demurred to the information. Lord claims that by his election to the vacancy as commissioner he succeeded to the mayoralty vacated by Minnehan or, if not, by virtue of his designation as director of the department of public affairs. Murray claims that as vice president of the board he became the presiding officer and mayor for the unexpired term of Minnehan.

This position of Murray is not sound in law. He never was chosen vice president of the board or its presiding officer but was only such, *ex officio,* as director of the department of revenue and finance, the statute providing that such director shall be vice president of the board "and in case of vacancy in the office of mayor, shall perform the duties of that office." The statute does not confer on him the office of mayor, but imposes the duties of the office in case of vacancy and when that condition ceases no vacancy exists. The only question remaining is does a vacancy appear by the facts, contained

in the information, which are admitted by the demurrer. There is nothing in the claim of Lord that he became mayor by his election as commissioner. The board was free to choose any of its members to that position, nor does the fact that he was designated by the board as director of public affairs help him. There is nothing in the statute providing that his selection as director of public affairs creates him mayor. The converse of this is the fact, for the statute requires the board to choose a presiding officer, who shall be designated mayor. and it is by virtue of his selection as presiding officer, with the designation of mayor, that he becomes director of public affairs, while the vice president becomes such because of his selection as director of revenue and finance. The board in case of vacancy in that office may choose a presiding officer, and he becomes thereby mayor for the unexpired term. There was a vacancy in the office of presiding officer and the board had the right to fill it, which they did by appointing Lord, who thereby became mayor for the unexpired term.

The case of *Woolley* v. *Flock*, 92 *N. J. L.* 65, is not applicable, for there the board attempted to create a vacancy by ousting the presiding officer during the term for which he had been elected, and manifestly they could not do that for they had no power to create a vacancy for the purpose of filling it. In the present case there was a vacancy created by the act of the presiding officer, and the statute provides who shall act during such vacancy only. The demurrer of Murray should be overruled and that of Lord sustained. The result being judgment of ouster against Murray, with costs.